**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



ROBERT JOHNSON,

        Plaintiff-Appellant,

v.

COSTCO WHOLESALE
CORPORATION, a Washington
corporation; et al.,

        Defendants-Appellees.

No.   19-15233

D.C. No. 2:17-cv-02710-SMB

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Submitted May 6, 2020[**]
Seattle, Washington

Before: KLEINFELD, W. FLETCHER, and RAWLINSON, Circuit Judges.
Dissent by Judge RAWLINSON

---

      [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

      [**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Robert Johnson appeals the district court order granting summary judgment in favor of Costco Wholesale Corporation ("Costco"). We reverse.

This was a straightforward state-law negligence claim. Johnson claimed that he was injured by a bottle of Prosecco that fell off the conveyor belt. All he needed to do to overcome Costco's summary judgment motion was establish plausibly by facts supported by admissible evidence at least a genuine issue of material fact, such that a jury could conclude that his injury was caused by Costco's negligence. Fed. R. Civ. P. 56(c). He did so.

The district court was of the view that he needed expert testimony, and he submitted none. But Rule 56 does not mention or ordinarily require expert opinion under Federal Rule of Evidence 702. All Johnson needs to avoid summary judgment is cognizable evidence for a prima facie case. Had he been making an esoteric case outside the ordinary experience of most people—for example, that something about the conveyor belt motor was faulty—he might have needed the opinion of someone knowledgeable about conveyor belt motors. But nothing in his papers suggests that he was. This seems to be a simple case of a bottle falling off an ordinary conveyor belt at the checkout counter. A jury might or might not

conclude that the exercise of reasonable care for customers' safety required a higher guardrail to keep tall objects from falling off, or a sign or oral warning from the clerk to lay bottles down instead of standing them up, or perhaps some other means of protecting customers. It might consider the frequency of things falling off the checkout stand, based on the jurors' experience and judgment, as in any routine negligence case. Costco has not explained, nor do we see, just what "knowledge, skill, experience, training, or education" might provide the foundation for an expert opinion, Fed. R. Evid. 702, or why an "expert's scientific, technical, or other specialized knowledge [would] help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* 702(a).

Arizona law does not support Costco's argument that expert testimony was necessary. "In the ordinary negligence action, the standard imposed is that of the conduct of a reasonably prudent man under the circumstances" and "it is not necessary for the plaintiff to present evidence to establish the standard of care because the jury can rely on its own experience in determining whether the defendant acted with reasonable care under the circumstances." *Bell v. Maricopa Med. Ctr.*, 755 P.2d 1180, 1182 (Ariz. Ct. App. 1988). If lay jurors are able "to

3

determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject," then expert testimony may be "inappropriate" under Arizona law. *Adams v. Amore*, 895 P.2d 1016, 1018 (Ariz. Ct. App. 1994) (quoting *State v. Chapple*, 660 P.2d 1208, 1220 (Ariz. 1983)). This case does not involve "a professional defendant, such as a health care provider, for which specialized standards of care apply," *Rudolph v. Arizona B.A.S.S. Fed'n*, 898 P.2d 1000, 1004 (Ariz. Ct. App. 1995), nor is it a case "in which factual issues are outside the common understanding of jurors." *Rossell v. Volkswagen of Am.*, 709 P.2d 517, 524 (Ariz. 1985). Therefore, the district court erred in ruling that plaintiff needed to provide expert testimony.

Jurors might conclude, depending on how the evidence develops at trial, that the hazard of bottles of highly carbonated liquid falling and breaking was obvious from the mode of operation, or that the hazard was known to Costco because items fell off the conveyor belt frequently. Costco argued that Johnson should not be able to use the Arizona "mode-of-operation" rule because it was not raised in the district court. But the mode-of-operation rule does not form a separate claim. Instead, a line of Arizona authority merely holds that plaintiffs' proof of a particular mode of operation substitutes for the need to prove notice if a third

4

party's conduct was the immediate cause of injury. *Chiara v. Fry's Food Stores*, 733 P.2d 283, 285 (Ariz. 1987). Johnson raised these points below. All that means for this case is that if Johnson sufficiently establishes mode of operation, he need not prove that Costco had actual or constructive notice about the falling bottle of Prosecco wine in time to do something about it before it injured Johnson. *Id.* Therefore, we reject Costco's argument that we cannot consider this rule because Johnson did not raise it below.

Johnson produced evidence that an upright "sparkling wine-type bottle" fell off the conveyor belt and shattered, injuring him. He also produced evidence that items fell off the conveyor belt frequently. Viewing the record in the light most favorable to Johnson, *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1002 (9th Cir. 2019), this is enough to create a genuine dispute of material fact as to whether Costco "reasonably could anticipate that the hazardous condition would occur on a regular basis" and whether Costco exercised reasonable care under the circumstances, *Shuck v. Texaco Ref. & Mktg., Inc.*, 872 P.2d 1247, 1249 (Ariz. Ct. App. 1994). Unlike the typical mode-of-operation case involving a "slip and fall," there is no question here about the origin of the condition that led to Johnson's

5

injuries. Johnson alleged he was in line to check out at Costco, another customer placed the bottle upright on the conveyor belt, and the bottle fell off the conveyor belt. Johnson has set forth evidence for the proposition that Costco reasonably could foresee that a third party, a customer, would occasionally cause something to fall off the conveyor belt and injure the next customer in line. *Chiara*, 733 P.2d at 286. Whether Costco was required to do anything more than it did to prevent customers' items from falling off the conveyor belt and injuring others turns on the reasonableness of the height of its guardrails and the likelihood of upright bottles falling off the belt—questions which, as we have described above, are squarely within the province of the jury. The court might or might not, depending on how the evidence develops, exercise its discretion to instruct on the Arizona mode-of-operation theory, but it is not a separate claim for relief or theory for which some special pleading or notice would be required.

We respectfully disagree with our dissenting colleague. Perhaps without a ruler, the jurors would have difficulty judging the height of the guardrail, though if the height mattered, one side or the other could prove it with an eyewitness and a ruler without the need for any expert opinion. As for the parameters of any claimed explosion of the carbonated beverage, almost certainly the jurors would

6

have had experience with carbonated beverages, since there is nothing unusual or esoteric about them.  Of course, if the plaintiff tries to prove its case with something outside the experience of ordinary jurors, then it may need expert witnesses to do it, but as the record comes to us, there is no suggestion that that is so.

We intimate no view as to whether Johnson ought or ought not to prevail. We hold merely that he is entitled, on what he has submitted, to have a jury decide.

**REVERSED and REMANDED.**

***Johnson v. Costco Wholesale Corp.*, Case No. 19-15233**
**Rawlinson, Circuit Judge, dissenting:**

I respectfully dissent.  I would affirm the district court's determination that expert testimony was required to raise a material issue of fact regarding whether Costco "breached the appropriate standard of care."

As the district court noted, Plaintiff asserted that Costco breached its duty of care in the following ways:  "(1) the conveyor belt did not have a tall enough guardrail; (2) Costco should not have allowed the bottle to proceed unless it laid the bottle on its side; and (3) Costco failed to warn customers about the possibility of carbonated [explosive] glass bottles falling off the conveyor belt."

Expert testimony "may be required in those cases in which factual issues are outside the common understanding of jurors."  *Rossell v. Volkswagen of Am.*, 709 P.2d 517, 524 (Ariz. 1985) (citation omitted).  "It is for the trial court in the exercise of a sound discretion to determine whether expert testimony is appropriate under the circumstances of the case."  *Cohen v. W. Hotels, Inc.*, 276 F.2d 26, 27 (9th Cir. 1960) (citation and alteration omitted).  In my view, the district court acted within its "sound discretion," *id.*, in concluding that the asserted breaches of the duty of care required the assessment of "factual issues . . . outside the common understanding of jurors."  *Rossell*, 709 P.2d at 524 (citation omitted).

1

The first assertion, that the guardrail on the conveyor belt was not "tall enough," requires assessment of the height of the guardrail. According to the record, the guardrail was estimated to be between one and six inches in height. As an initial matter, most potential jurors would likely be unable to accurately estimate the height of the guardrail. *See, e.g.*, Stephanie Pappas, *Judging Distances and Depth Perception Change with Arm Length*, Scientific American (Jan. 22, 2014). "The justices of the Supreme Court may be among the best legal minds in the country, but they have no eye for distances . . . [T]he justices were stumped at the size of [a] 35-foot long . . . buffer zone." *Id.* One of the Associate Justices estimated that 35 feet was "pretty much the [length of the] courtroom." However, the courtroom actually measured more than twice as long (90 feet). *See id.* In addition to this indication of the difficulty of estimating heights, there is also the question of the proper height for guardrails at a checkout stand. How are the jurors to make that determination short of speculation? *See Neely v. St. Paul Fire and Marine Ins. Co.*, 548 F.2d 341, 346 (9th Cir. 1978) (noting that "[p]arties are entitled to have the determination of their rights rest on more than speculation and guesswork.") Who will inform the jurors of the range of guardrail heights within the industry, and what is a minimum and maximum height consistent with best practices? These are the sort of questions usually addressed by experts. *See, e.g.*,

2

*McMurtry v. Weatherford Hotel, Inc.*, 239 P.3d 520, 526 (Ariz. Ct. App. 2013) (describing expert testimony regarding whether a hotel window "conform[ed] to industry standards for hotels"). The majority suggests use of a ruler to measure the height of the guardrails. But what is the jury to do with that information? They are still left with a raw measurement and no frame of reference to suggest how that measurement compares to industry standards. *See id.*

Even more apparent is the need for expert testimony to explain the parameters of any expected "explosion" as a result of the fall of carbonated beverages. *See Ball Corp. v. George*, 556 P.2d 1143, 1145-46 (Ariz. Ct. App. 1976) (accepting testimony regarding the "cause of [a Pepsi-Cola] bottle failure" resulting in an explosion due to the amount of gas pressure). Jurors' everyday experiences with carbonated beverages simply do not equip them to opine on the amount of gas pressure that will cause a bottle to explode. *See id.*

Without articulating how the district court abused its discretion, the majority merely reaches a different conclusion on the issue of whether expert testimony was required under the circumstances of this case. Because, as discussed, there are analogous cases supporting the district court's determination that expert testimony was required, it cannot be fairly said that the district court erred in its application of the law. *See Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) ("The abuse of

3

discretion standard requires us to uphold a district court determination that falls within a broad range of permissible conclusions, provided the district court did not apply the law erroneously. . . ." (citation omitted). I would affirm the judgment of the district court.[1]

---

[1]Although the majority does not ultimately conclude that the mode-of-operation analysis is applicable, I note that this theory only applies if there is evidence that the conveyor belt *regularly* created hazardous conditions. *See Contreras v. Walgreens*, 149 P.3d 761, 763 (Ariz. Ct. App. 2006) (concluding that evidence of spills occurring twice a week did not necessarily "permit the inference such spills regularly created a hazardous condition").