2011 UT App 270

**David FISHER, individually and on behalf of Office Management Consultants, LC, Plaintiff, Appellee, and Cross-appellant,**

v.

**Lavern DAVIDHIZAR, Defendant, Appellant, and Cross-appellee.**

No. 20090752–CA.

Court of Appeals of Utah.

Aug. 18, 2011.

Robert S. Clark, Michael T. Hoppe, and Robyn L. Wicks, Salt Lake City, for Appellant and Cross-appellee.

Darwin C. Fisher, St. George, for Appellee and Cross-appellant.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## OPINION

CHRISTIANSEN, Judge:

¶ 1 Defendant Dr. Lavern Davidhizar appeals the trial court's dismissal of his claims for negligent misrepresentation and fraud and his affirmative defense of fraud (collectively, the fraud claims). We reverse and remand. Plaintiffs David Fisher and Office Management Consultants, LC (collectively, OMC) appeal the trial court's denial of its motion to strike and of its denial of OMC's motion for summary judgment as to Davidhizar's fraud claims. We affirm.

## BACKGROUND

¶ 2 Fisher and Eugene Coder owned and operated Office Management Consultants, LC, which was formed in part to generate income by leasing tables to medical providers for use in treating disc decompression. In August 2001, Davidhizar contributed $100,000 to help OMC finance two tables (the tables). In October 2001, Davidhizar claimed to have a partnership interest with OMC in the tables. OMC disputed his claim. To resolve what interests each party had in the tables, the parties arranged a meeting in February 2002. Prior to and during the meeting, Davidhizar alleged that OMC and its representatives had made and continued to make statements about the amount of income generated by the tables under contract and the status of those contracts.[1] At

---

1. In addition to the alleged statements made during the meeting, Davidhizar's accountant received a letter from OMC's attorney prior to the meeting that stated, in part, You will not only be receiving tables, but also an income source.... Therefore, you will have approximately $2,000.00 a month income from servicing [one of OMC's clients named Dr.]

the meeting, Davidhizar entered into a written settlement agreement (the Agreement) with OMC. The Agreement transferred ownership of OMC, the tables, and some of OMC's assets to Davidhizar in return for Davidhizar assuming OMC's debt and certain other financial obligations.

¶ 3 Although Davidhizar accepted some of the equipment, software, and supplies per the Agreement, nine days after entering into the Agreement, Davidhizar notified OMC of his intent not to fulfill the terms of the Agreement. Thereafter, Davidhizar failed to assume or pay the debts, building lease, or operating expenses, and failed to take control and operate OMC. In spite of these failures, in April 2002, utilizing one of OMC's tables, Davidhizar, Coder, and Dennis McOmber formed a new company and placed the table with one of OMC's clients. In May 2002, OMC filed its complaint seeking damages for Davidhizar's breach of the Agreement.[2] Davidhizar did not dispute that he had breached the Agreement but claimed as an affirmative defense that his breach was justified by OMC's fraudulent behavior. Davidhizar also filed a counterclaim for, inter alia, negligent misrepresentation and fraud.

¶ 4 In April 2005, OMC filed two motions for summary judgment. Shortly after the motions were filed, Davidhizar's counsel filed a motion to withdraw and a motion seeking an extension of time to file opposition memoranda to OMC's summary judgment motions. OMC objected to the withdrawal of Davidhizar's counsel. In September 2005, the trial court granted the motion to allow Davidhizar's counsel to withdraw but denied Davidhizar's request for an extension of time to file opposition memoranda to OMC's summary judgment motions. Nevertheless, after Davidhizar obtained new counsel, but before the hearing on OMC's summary judgment motions, Davidhizar filed opposition memoranda. OMC filed a motion to strike the memoranda, which the trial court denied. The trial court granted OMC's motion for summary judgment on the breach of contract claim and denied OMC's motion for summary judgment on Davidhizar's fraud claims.

¶ 5 Thereafter, the parties continued to prepare for trial. At a pretrial hearing held on August 23, 2007, only four days before trial was scheduled to begin, OMC filed a motion in limine wherein it requested that the trial court dismiss Davidhizar's fraud claims because they were not pleaded with particularity as required by rule 9 of the Utah Rules of Civil Procedure. Davidhizar responded by filing a motion to amend his pleadings. He argued that leave should be granted to amend the pleadings to conform to the evidence because the facts supporting his defense and claims had been effectively litigated through the summary judgment motions. See Utah R. Civ. P. 15(b). The trial court stated, "I really don't have any difficulty in implying into the pleadings of fraud in the inducement plan. It's been spoken of for years in this litigation. It's been [alluded] to either directly or indirectly for years." Despite that statement, the trial court determined that the fraud claims were not pleaded with particularity as required by rule 9(b) of the Utah Rules of Civil Procedure and granted OMC's motion in limine The trial court then denied Davidhizar's motion to amend determining that it was untimely because the motion had been filed past the motion deadline in the scheduling order. The trial court determined that because Davidhizar had not amended the pleadings or filed a motion to amend before the scheduling order deadline, Davidhizar's fraud claims should be dismissed as a sanction under rule 37 of the Utah Rules of Civil Procedure for failure to comply with the scheduling order. Alternatively, the trial court determined that even if it were to grant the motion to amend, Davidhizar still could not prevail because he could not prove his fraud claims by clear and convincing evidence.

Boyer and approximately $3,000.00 to $5,000.00 a month from the tables for a total of $7,000.00. The client contracts have value and though we can disagree as to the amount of value, there is no question that they have value.

2. The complaint also sought damages from two other people involved with OMC, Robert Nash and Dennis McOmber, but the claims against both of those parties were dismissed shortly before the trial was scheduled.

¶ 6 After the trial court dismissed Davidhizar's fraud claims, a bench trial was held for the limited purpose of determining damages incurred by OMC. The trial court ultimately entered judgment against Davidhizar in excess of $800,000. Both parties now appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Davidhizar challenges the trial court's dismissal of his fraud claims, arguing that the trial court erred in not applying rule 15(b) of the Utah Rules of Civil Procedure because the parties had litigated the fraud claims throughout the case despite the lack of particularity in the complaint.[3] Pursuant to rule 15(b), once an issue has been tried, as the trial court determined it was here, that issue "must be treated as if it were properly raised in the pleadings." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 24, 70 P.3d 35. We review the trial court's declination of the application of rule 15(b) for correctness.

¶ 8 In its cross-appeal, OMC argues that the trial court erred in denying its motion for summary judgment on Davidhizar's fraud claims. "An appellate court reviews a trial court's 'legal conclusions and ultimate grant or denial of summary judgment' for correctness and views 'the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.'" *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations omitted). OMC also argues that the trial court erred in refusing to strike Davidhizar's opposition memorandum to OMC's motion for summary judgment on the fraud claims. "As a general rule, '[t]rial courts have broad discretion in managing the

cases assigned to their courts.'" *Posner v. Equity Title Ins. Agency, Inc.*, 2009 UT App 347, ¶ 23, 222 P.3d 775 (alteration in original) (citation omitted), *cert. denied*, 230 P.3d 127 (Utah 2010); *see also Hartford Leasing Corp. v. State*, 888 P.2d 694, 702 (Utah Ct. App.1994) ("'[A] trial judge is accorded broad discretion in determining how a [case] shall proceed in his or her courtroom.'" (alterations in original) (citation omitted)).

## ANALYSIS

I. The Trial Court Erred in Dismissing Davidhizar's Fraud Claims.

¶ 9 Davidhizar argues that the trial court erred in not applying rule 15(b) of the Utah Rules of Civil Procedure because the parties had litigated the specific facts of his fraud claims throughout the case. Rule 15(b) provides, in part,

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial on these issues.

Utah R. Civ. P. 15(b). Rule 15 has two relevant subsections: (a) and (b).[4] Subsection (a) instructs the trial court to freely grant the motion to amend "when justice so requires," *id.* R. 15(a), and, therefore, gives the trial court discretion to deny such a motion.[5] *See Daniels v. Gamma W. Bra-*

---

3. Davidhizar also claims that the trial court's sanction under rule 37 of the Utah Rules of Civil Procedure was erroneous. Additionally, he challenges the trial court's award of attorney fees and prejudgment interest, and its lack of offset in its damages award. Given our disposition of this case, we do not address these issues.

4. Subsection (b) also contains two parts. The first part is quoted above; the second part concerns situations when a party objects to the evidence produced. *See* Utah R. Civ. P. 15(b) ("If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the

objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court shall grant a continuance, if necessary, to enable the objecting party to meet such evidence."); *Lloyd's Unlimited v. Nature's Way Mktg., Ltd.*, 753 P.2d 507, 509 (Utah Ct.App. 1988). Because OMC did not object that Davidhizar's factual allegations of fraud in his summary judgment memoranda had not been properly pleaded, we focus only on the first part of subsection (b).

5. While both parties address rule 15(a), we do not address that section given our disposition under rule 15(b).

chytherapy, LLC, 2009 UT 66, ¶¶ 58, 60, 221 P.3d 256. However, if the trial court determines that the party had notice of the claim presented and did not object to the introduction of evidence related to the claim, then the trial court has no discretion under subsection (b) and "must ... treat[ the claim] as if it were properly raised in the pleadings." See Armed Forces Ins. Exch., 2003 UT 14, ¶ 24, 70 P.3d 35; see also Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc., 795 P.2d 658, 663 (Utah 1990) ("Our rules of civil procedure require that the pleadings be conformed to the evidence presented at trial when no objection is made to the introduction of such evidence." (emphasis added)); Clark v. Second Circuit Court, 741 P.2d 956, 957 (Utah 1987) ("The parties' failure to move to amend the pleadings to conform to the evidence does not affect the fact that those issues were in fact tried by the consent of the parties and were therefore properly before the court."); cf. Utah R. Civ. P. 54(c)(1) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.").

¶ 10 OMC suggests that the fraud claims could not have been tried because the claims were dismissed before the trial occurred. Although rule 15(b) uses the word "tried," the Utah Supreme Court has applied rule 15(b) to a case that was adjudicated at the summary judgment stage of litigation. In Ward v. Intermountain Farmers Ass'n, 907 P.2d 264 (Utah 1995), Ward argued in his opposition to Intermountain Farmers Association's (IFA) motion for summary judgment that his claims were not barred by a release agreement because IFA had procured such agreement by fraud. See id. at 267 n. 5. The trial court granted IFA's summary judgment motion. See id. at 266. On appeal, the Utah Supreme Court addressed Ward's argument

that rule 15(b) relieved him of his duty to plead fraud with particularity as required by rule 9(b) of the Utah Rules of Civil Procedure. See id. at 267 n. 5. The court evaluated the arguments regarding fraud that were made in the motion for summary judgment and during a hearing but ultimately determined that Ward could not rely on rule 15(b) because his fraud claim was "only inferentially suggested by incidental evidence in the record,"[6] see id. Thus, Ward establishes that rule 15(b) is applicable to a case such as this one where claims were litigated by motions for summary judgment rather than at trial. See id.

¶ 11 Unlike the claim in Ward, the fraud claims in this case were more than "inferentially" suggested. The parties argued and discussed the fraud claims before the trial court. The trial court recognized that the fraud claims had been particularly raised during the litigation when it stated, "I really don't have any difficulty in implying into the pleadings of fraud in the inducement plan. It's been spoken of for years in this litigation. It has been [alluded] to either directly or indirectly for years."[7] Furthermore, the allegations of fraud appear to have been pleaded specifically enough for OMC to address the claims in its summary judgment motions. OMC's memorandum supporting its motion for summary judgment on Davidhizar's fraud claims states,

> Davidhiz[a]r admits that he breached the Agreement but claims as an affirmative defense and as a counterclaim that he was fraudulently induced to sign the Agreement by Fisher. Davidhiz[a]r alleges that Fisher fraudulently induced him to sign the Agreement by stating that OMC's client contracts had a value of $60–80,000.00. In addition, Davidhiz[a]r claims that Fisher knew prior to February 18,

6. However, the court stated that "[o]n remand, ... Ward should be afforded an opportunity to amend his pleadings to raise the issues of fraud and mutual mistake." Ward v. Intermountain Farmers Ass'n, 907 P.2d 264, 267 n. 5 (Utah 1995).

7. The trial court then stated that even if it were to grant the motion to amend, Davidhizar still could not prevail at trial because he could not prove his fraud claims by clear and convincing

evidence. The trial court's statement is curious because the court had previously denied OMC's motion for summary judgment on Davidhizar's fraud claims, presumably because there were significant factual disputes surrounding Davidhizar's fraud claims, which would warrant a trial to allow the fact finder to determine which of the competing version of events to believe. See infra ¶¶ 14–15.

2002, that Dr. Cutler had terminated his client contract with OMC and still included Dr. Cutler's client contract in the $60–80,000.00 valuation.

Davidhizar's opposition memorandum disputed OMC's contention that "all of the client contracts were in good standing" with evidence that Fisher had received notification from Dr. Cutler that he intended to terminate his contract with OMC, and that Fisher had told his business partner, Coder, that such a notification had occurred. Davidhizar also claimed in his opposition memorandum that he was fraudulently induced into signing the Agreement by statements from OMC "that all of the contracts ... were 'in good condition'" and "'still functioning.'" In its reply memorandum in support of its summary judgment motion on Davidhizar's fraud claims, OMC acknowledged these factual assertions by Davidhizar, denied that Fisher ever stated that the contracts were in good standing, and acknowledged that Fisher had stated that the client contracts were current. Furthermore, in OMC's reply memorandum for its summary judgment motion on its breach of contract claim, OMC acknowledged Davidhizar's arguments regarding the status of the contracts but claimed they were irrelevant to determine summary judgment on the damages issue.[8]

¶ 12 We determine that the trial court should have applied rule 15(b) to Davidhizar's fraud claims and treated them as if they had been sufficiently pleaded because the parties had argued the specifics of the fraud claims during the five-year litigation process without OMC's objection, and we determine that OMC had received specific notice of Davidhizar's defenses and claims from his summary judgment opposition memoranda.[9]  *See* Utah R. Civ. P. 15(b).  OMC cannot avoid the claims altogether by objecting to the inadequate pleadings on the eve of trial when the problems with the pleadings had been present since the beginning of the litigation, but OMC chose to litigate the issues rather than object to the inadequate pleadings.  *Cf. Armed Forces Ins. Exch. v. Harrison,* 2003 UT 14, ¶¶ 24–25, 70 P.3d 35 (determining that treating an issue "as if it were properly raised in the pleadings ... is much preferred to the alternative of dismissal, especially where a trial has proceeded to conclusion on the existing pleadings and where defendant has suffered no prejudice by reason of any deficiency in the pleadings" (internal quotation marks omitted)).  Moreover, OMC had clear notice of Davidhizar's specific fraud allegations regarding the status of Cutler's contract and the value of the contracts.[10] Because the parties tried the specific facts of Davidhizar's fraud claims without OMC's objection, we hold that the trial court erred in not treating the claims as if they were properly raised in the pleadings, *see* Utah R. Civ. P. 15(b), and in granting OMC's motion in limine.  Therefore, we reverse the trial court's dismissal of Davidhizar's fraud claims; consequently, the trial court's judgment and damages award in favor of OMC is vacated, and we remand for further proceedings consistent with this opinion.

II.  The Trial Court Did Not Abuse Its Discretion in Accepting Davidhizar's Opposition Memorandum to OMC's Summary Judgment Motion on the Fraud Claims.

¶ 13 In its cross-appeal, OMC argues that the trial court erred in considering Davidhizar's untimely filed memorandum opposing OMC's summary judgment motion on the fraud claims.  Trial courts "have broad discretion in managing the cases assigned to their courts."  *Golden Meadows Props., LC v. Strand,* 2010 UT App 257, ¶ 11, 241 P.3d

---

8. Interestingly, OMC's appellate brief does not dispute that the issue of the contract's value was tried but focuses only on the fact that the contract's status was not an issue that was tried. However, both issues were specifically raised and argued prior to the trial.

9. The specific facts Davidhizar raised during the summary judgment procedure would have satisfied any rule 9 particularity requirement if those facts had been pleaded.  *See* Utah R. Civ. P. 9(b);

*Hill v. Allred,* 2001 UT 16, ¶ 14, 28 P.3d 1271 ("[A] sufficiently clear and specific description of the facts underlying the [fraud] claim ... will satisfy the requirements of rule 9(b).").

10. However, the record does not demonstrate whether the status of OMC's contract with Dr. Jeppson, another doctor under contract with OMC, had been tried.  Any attempt by Davidhizar to assert this claim on remand will require a showing that this specific issue was tried.

375 (mem.) (internal quotation marks omitted). Although the trial court initially denied Davidhizar's request to extend the time to file his opposition memoranda, the court eventually allowed the memoranda for both summary judgment motions to be filed and considered. It is squarely within the trial court's discretion whether to revisit or reverse its prior decisions. *See IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 27, 196 P.3d 588 ("While a case remains pending before the district court prior to any appeal, the parties are bound by the court's prior decision, but the court remains free to reconsider that decision. It may do so sua sponte or at the suggestion of one of the parties.... As long as the case has not been appealed and remanded, reconsideration of an issue before a final judgment is within the sound discretion of the district court." (footnote omitted)). Given the circumstances of this case—that Davidhizar's counsel requested to withdraw from the case shortly after OMC filed its summary judgment motions; that OMC challenged the withdrawal, which the trial court had to resolve before counsel could withdraw and new counsel could be substituted; and that Davidhizar's memoranda opposing summary judgment, although filed seven months after the motion for summary judgment, was filed fifteen days after new counsel was substituted—we cannot say that the trial court abused its discretion in refusing to strike Davidhizar's memorandum relating to the summary judgment motion on the fraud claims.

### III. The Trial Court Correctly Denied OMC's Summary Judgment Motion on Davidhizar's Fraud Claims.

¶ 14 OMC's cross-appeal also challenges the trial court's denial of OMC's summary judgment motion on Davidhizar's fraud claims.[11] "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Orvis v. Johnson*, 2008 UT 2, ¶ 13, 177 P.3d 600 (quoting Utah R. Civ. P. 56(c)). In its summary judgment motion, OMC admitted that Davidhizar presented disputed facts about his fraud claims, but OMC now argues on appeal that because of this contradictory evidence, Davidhizar could not establish his fraud claims by clear and convincing evidence. However, as the party moving for summary judgment, OMC had an "affirmative obligation to first *demonstrate* that there exists no genuine issue of material fact." *Id.* ¶ 17 (emphasis in original).

A summary judgment movant, on an issue where the nonmoving party will bear the burden of proof at trial, may satisfy its burden on summary judgment by showing, by reference to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there is no genuine issue of material fact. Utah R. Civ. P. 56(c). Upon such a showing, whether or not supported by additional affirmative factual evidence, the

11. The trial court's procedure in initially denying summary judgment on Davidhizar's fraud claims and then subsequently granting OMC's motion in limine appears contradictory. Our confusion arises from the trial court's stated alternative basis for granting OMC's motion in limine. The trial court's statements made during the pretrial hearing and in its order indicated that the evidence submitted through Davidhizar's opposition memorandum to the motion in limine and proffered by Davidhizar at the hearing would not be sufficient to meet the clear and convincing standard of proof that Davidhizar would be required to meet at trial. This is especially troubling because OMC's motion in limine sought to exclude Davidhizar's evidence because his complaint had not been pleaded with particularity, not because Davidhizar's evidence was not sufficient to prove fraud. It seems what the trial court did in context of the motion in limine was revisit its summary judgment ruling. However, the trial court appears not to have relied on the facts from the summary judgment filings but instead based its decision on the limited evidence that Davidhizar was able to proffer at the hearing. In doing so the court stated that "the statements urged by [Davidhizar] are ambiguous and contradictory and therefore cannot sustain the clear and convincing burden of proof." If the trial court was revisiting its previous denial of summary judgment on the fraud claims, it erred in considering contradictory evidence and making a credibility determination, as will be more fully discussed in this section. Furthermore, although styled as a motion in limine, OMC's last minute motion was in substance a motion to dismiss made long after the motion cut-off date had passed.

burden then shifts to the *nonmoving* party, who "may not rest upon the mere allegations or denials of the pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* 56(e).

*Orvis,* 2008 UT 2, ¶ 18, 177 P.3d 600 (emphasis in original).

■■■ ¶ 15 Having admitted that contradictory evidence existed, OMC essentially argues that the trial court should weigh conflicting evidence to determine whether that evidence was clear and convincing. Although Davidhizar carries the burden to prove fraud by clear and convincing evidence at trial, the trial court cannot weigh contradictory evidence or determine credibility when deciding whether summary judgment is appropriate. *See IHC Health Servs., Inc.,* 2008 UT 73, ¶ 18, 196 P.3d 588 ("[A] district court is precluded from granting summary judgment if the facts shown by the evidence on a summary judgment motion support more than one plausible but conflicting inference on a pivotal issue in the case ... particularly if the issue turns on credibility or if the inferences depend upon subjective feelings or intent." (omission in original) (emphasis and internal quotation marks omitted)); *Pigs Gun Club, Inc. v. Sanpete Cnty.,* 2002 UT 17, ¶ 24, 42 P.3d 379 ("A trial court is not authorized to weigh facts in deciding a summary judgment motion, but is only to determine whether a dispute of material fact exists, viewing the facts and all reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party." (citation omitted)); *Martin v. Lauder,* 2010 UT App 216, ¶ 14, 239 P.3d 519 (mem.) ("[W]eighing credibility and assigning weight to conflicting evidence is not part of the district court's role in determining summary judgment."). In a fraud claim, "[s]ummary judgment is warranted if a plaintiff fails to supply evidence, which, if accepted as true, would clearly and convincingly support each element of a fraud claim." *Giusti v. Sterling Wentworth Corp.,* 2009 UT 2, ¶ 62, 201 P.3d 966 (internal quotation marks omitted); *see also Andalex Res., Inc. v. Myers,* 871 P.2d 1041, 1046 (Utah Ct.App.1994) ("In granting a motion for summary judgment, a trial judge must consider each element of the claim under the appropriate standard of proof. Fraud claims must be proven by clear and convincing evidence." (citations omitted)). The trial court does not weigh conflicting evidence but instead views the undisputed evidence in the light most favorable to the nonmoving party and determines whether, as a matter of law, each element of fraud can be established by clear and convincing evidence. *See Giusti,* 2009 UT 2, ¶ 62, 201 P.3d 966. Because Davidhizar presented sufficient facts, if accepted as true, would establish the elements of fraud by clear and convincing evidence, the trial court did not err in denying OMC summary judgment on Davidhizar's fraud claims.

■■■ ¶ 16 Additionally, OMC argues that even if factual disputes existed as to what statements were made, OMC's statements regarding the amount of income generated or the status of the contracts were opinions, and thus, OMC argues that Davidhizar cannot prove that the statements were false. OMC provides no legal authority to support its suggestion that comments concerning the amount of income generated or the status of contracts are always statements of opinion but instead relies on cases that discuss the value of real property, which has been generally determined to be a statement of opinion. *See Byers v. Federal Land Co.,* 3 F.2d 9, 11 (8th Cir.1924) ("An honest opinion as to the monetary value of *property,* stated as an opinion[,] is not a fraudulent misrepresentation ...." (emphasis added)); *Wright v. Westside Nursery,* 787 P.2d 508, 512–13 (Utah Ct.App.1990) (determining that a statement that the property was worth $90,000 was not fraudulent because statements regarding the value of property are opinions and thus not fraudulent). Because OMC's statements are not per se statements of opinion, the factual circumstances surrounding the statements must be weighed to determine whether they are statements of fact or opinion. *See Condas v. Adams,* 15 Utah 2d 132, 388 P.2d 803, 805 (1964). Generally, "[w]hether a representation is one of opinion or one of fact must be determined not only by the subject matter, but by the form of the statement, the attendant circumstances, and the knowledge of the parties."

*Id.* Thus, because disputes regarding material facts exist regarding whether OMC's statements were opinions or facts, summary judgment was not appropriate, and the trial court did not err in denying summary judgment on Davidhizar's fraud claims.

## CONCLUSION

¶ 17 We reverse the trial court's decision to dismiss Davidhizar's fraud claims because the claims were tried, and thus, the trial court was required to treat the fraud claims as if they had been properly pleaded. We affirm the trial court's denial of OMC's motion to strike Davidhizar's opposition memorandum and affirm the trial court's denial of OMC's motion for summary judgment on Davidhizar's fraud claims because material facts were in dispute.

¶ 18 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and J. FREDERIC VOROS JR., Judge.